UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



CASE NO. **00-6154** 1CR-JORDAN

18 U.S.C. 1962(d)
18 U.S.C. 1955
18 U.S.C. 1956
18 U.S.C. 892
18 U.S.C. 894
18 U.S.C. 371
18 U.S.C. 2

MAGISTRATE JUDGE
BANDSTRA

UNITED STATES OF AMERICA, )
        Plaintiff, )
 )
 )
v. )
 )
 )
REYNOLDS MARAGNI, )
JOSEPH ROTUNNO, )
   aka Joey Flowers, )
   aka Flowers, )
   aka Joe the Florist, )
PERCY MORRIS, )
   aka Tiny, )
BERT CASKILL, )
GARY BRAESEKE, )
EMRO CAPRI, )
   aka Mike Capri )
MARTIN HALPERN, )
DANIEL MEISEL, )
   aka Danny, )
WILLIAM HAWKINS, )
JAMES TRAVERS, )
BARBARA DREZEK, )
MARTIN ZARCADOOLAS )
   aka Marty, )
   aka Marty Z, )
MICHAEL EDDY, )
   aka Doug Eddy, )
   aka Sonny, )
KAISER AKEL, )
JAMES LAPOLLA, )
RICHARD D'ONOFRIO, )
   aka Richie, )
SCOTT MILLER,  and, )
JEANNE BROOKS, )
        Defendants. )
_____ )



## INDICTMENT

The Grand Jury charges that:



## COUNT 1

### INTRODUCTION

At all times relevant to this Indictment:

1.    The members and associates of the Colombo Organized Crime Family of La Cosa Nostra ("the Colombo Family") were a criminal organization that operated in New York, South Florida and elsewhere.

2.    The Colombo Family operated through groups of individuals headed by "captains" who were also referred to as "capos." These groups, which were referred to as "crews," consisted of "made" members of the Colombo Family, who were also referred to as "soldiers," and of non-member criminal associates of the Colombo Family.

3.    The "South Florida crew" of the Colombo Family was supervised and controlled by the hierarchy of the Colombo Family located in New York. The "South Florida crew" generated profits from criminal activities for the benefit of the Colombo Family.

4.    The Federal Bureau of Investigation conducted an undercover investigation in which a cooperating witness, who previously had been a member of the "South Florida crew" of the Colombo Family, worked in an undercover capacity for the purpose of gathering evidence concerning the criminal activities of the members of the enterprise.

### THE ENTERPRISE

5.    From in or about 1997, and continuing thereafter up to and including the date of the return of this Indictment, in the Southern District of Florida and elsewhere, the "South Florida

2

crew" of the Colombo Family constituted an enterprise within the meaning of Title 18, United States Code, Section 1961 (4), that is, a group of individuals associated in fact which engaged in various criminal activities, including the making and collecting of extortionate loans, money laundering, the operation of illegal gambling businesses, fraud in connection with credit cards, bank fraud, obtaining false identification documents, the sale and receipt of stolen goods, and the collection of unlawful debt.

## THE CONSPIRACY

6.     From in or about 1997, the exact date being unknown to the Grand Jury, and continuing thereafter up to and including the date of the return of the Indictment, in the Southern District of Florida and elsewhere, the defendants,

> REYNOLDS MARAGNI,
> JOSEPH ROTUNNO,
> PERCY MORRIS,
> BERT CASKILL,
> GARY BRAESEKE,
> EMRO CAPRI,
> MARTIN HALPERN,
> DANIEL MEISEL,
> WILLIAM HAWKINS,
> JAMES TRAVERS,
> BARBARA DREZEK,
> MARTIN ZARCADOOLAS,
> MICHAEL EDDY,
> KAISER AKEL
> JAMES LAPOLLA,
> RICHARD D'ONOFRIO,
> SCOTT MILLER, and
> JEANNE BROOKS,

together with others being persons employed by and associated with the "South Florida crew" of the Colombo Family, which enterprise engaged in, and the activities of which affected, interstate and

3

foreign commerce, knowingly, willfully and unlawfully did combine, conspire, confederate, and agree together, and with each other, and with persons known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity as defined by Title 18, United States Code, Sections 1961(1) and (5) as set forth in paragraph 7, and through the collection of unlawful debts as defined by Title 18, United States Code, Section 1961(6), as set forth in paragraph 8.

## PATTERN OF RACKETEERING ACTIVITY

7.    The pattern of racketeering activity that the defendants agreed would be committed in the conduct of the affairs of the enterprise consisted of multiple acts involving violations of the following laws:

A.    Conducting, financing, managing, supervising and directing illegal gambling businesses, in violation of Title 18, United States Code, Section 1955;

B.    Laundering of monetary instruments and conspiracy to do so, in violation of Title 18, United States Code, Section 1956;

C.    Making extortionate extensions of credit and conspiracy to do so, in violation of Title 18, United States Code, Section 892;

D.    Collection of extensions of credit by extortionate means and conspiracy to do so,  in violation of Title 18, United States Code, Section 894;

4

E.   Sale and receipt of stolen goods, in violation of Title 18, United States Code, Section 2315;

F.   Bribery, in violation of Florida State Statute, Section 838.016;

G.   Mail Fraud, in violation of Title 18, United States Code, Section 1341.

H.   Wire Fraud, in violation of Title 18, United States Code, Section 1343.

I.   Fraud in connection with access devices and conspiracy to do so, in violation of Title 18, United States Code, Section 1029.

J.   Bank fraud, in violation of Title 18, United States Code, Section, 1344.

### COLLECTION OF UNLAWFUL DEBT

8.   The collection of unlawful debt through which the defendants and their coconspirators agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise consisted of the collection from various individuals of unlawful debts, as that term is defined by Title 18, United States Code, Section 1961(6), to wit: a) a debt which was incurred and contracted in gambling activity and which was incurred in connection with the business of gambling, which activity and business were in violation of the laws of the United States and Florida; and b) debts which were unenforceable under State and Federal law in whole and in part as to principal and interest because of the laws relating to usury and which were incurred in connection with the business of lending money at a rate usurious

5

under State and Federal law, where the usurious rate was at least twice the lawfully enforceable rate.

## MANNER AND MEANS OF THE CONSPIRACY

9.    It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two racketeering acts, or participate in the collection of at least one unlawful debt, in conducting the affairs of the enterprise.

10.    It was part of the conspiracy that defendant REYNOLDS MARAGNI, and a non-member associate of the Colombo family, would act as a liaison between the hierarchy of the Colombo Family, located in New York, and the members and associates of the "South Florida crew."    Defendant MARAGNI would arrange, organize and facilitate large-scale credit card and bank fraud activities. Defendant MARAGNI would also supervise activities involving loanshark collections and illegal gambling businesses, and bribe corrupt Florida State Driver's License Examiners to obtain fraudulent drivers' licenses, for the benefit of the enterprise.

11.    It was further a part of the conspiracy that defendant JOSEPH ROTUNNO, a non-member associate of the Colombo Family, would supervise and control the "South Florida crew" of the Colombo Family.    Specifically, defendant ROTUNNO would supervise and coordinate the activities of several large-scale illegal gambling businesses that operated in South Florida and would arrange for the collection by extortionate means of extensions of credit, gambling losses incurred by bettors and other debts for the benefit of the enterprise. Defendant ROTUNNO would also launder criminal proceeds generated through the criminal activities of the enterprise,

6

receive and sell stolen property, and bribe corrupt Florida State Driver's License Examiners to obtain fraudulent drivers' licenses for the benefit of the enterprise.

12. It was further a part of the conspiracy that defendant PERCY MORRIS would specialize in the use of extortionate means to collect extensions of credit, gambling losses incurred by bettors and other debts, pursuant to instructions from defendant ROTUNNO for the benefit of the enterprise.

13. It was further a part of the conspiracy that defendants GARY BRAESEKE and EMRO CAPRI would operate a large-scale illegal gambling business, under the direction of defendant ROTUNNO, and would arrange for collections by extortionate means of extensions of credit, gambling losses incurred by bettors and other debts for the benefit of the enterprise.

14. It was further a part of the conspiracy that defendant MARTIN HALPERN would arrange the financing for the operation of large-scale illegal gambling businesses controlled by defendant ROTUNNO for the benefit of the enterprise.

15. It was further a part of the conspiracy that defendants DANIEL MEISEL and WILLIAM HAWKINS would supervise and control large-scale illegal gambling businesses in South Florida and would use defendant ROTUNNO to collect by extortionate means, extensions of credit and gambling losses incurred by bettors for the benefit of the enterprise.

16. It was further a part of the conspiracy that defendants JAMES TRAVERS and BARBARA DREZEK would operate a large-scale

7

illegal gambling business controlled by defendants MEISEL and HAWKINS, for the benefit of the enterprise.

17. It was further a part of the conspiracy that defendants BERT CASKILL, MARTIN ZARCADOOLAS, SCOTT MILLER and MICHAEL EDDY would function as independent agents associated with various illegal gambling businesses and would refer bettors to the illegal gambling businesses controlled by defendant ROTUNNO and other coconspirators. Defendants CASKILL, ZARCADOOLAS, MILLER and EDDY would use defendant ROTUNNO to collect by extortionate means, extensions of credit, gambling losses incurred by bettors, and other debts for the benefit of the enterprise.

18. It was further a part of the conspiracy that defendant JAMES LAPOLLA would bribe corrupt Florida State Driver's License Examiners to obtain fraudulent drivers' licenses, and would arrange for the collection by extortionate means of extensions of credit and other debts, for the benefit of the enterprise.

19. It was further a part of the conspiracy that defendant JEANNE BROOKS, in her employment as a Florida State Driver's License Examiner, would accept bribes in return for the production of Florida State motor vehicle licenses containing false and fictitious information to be used by other members of the enterprise.

20. It was further a part of the conspiracy that defendant KAISER AKEL would operate a check cashing store and launder the criminal proceeds generated through the operation of illegal gambling businesses, wire fraud activity, the collection of

8

extortionate extensions of credit and other crimes for the benefit of the enterprise.

21. It was further a part of the conspiracy that defendant RICHARD D'ONOFRIO would use the pawn business known as "BIG AL's PAWN" located in Broward County to receive and sell stolen property for the benefit of the enterprise.

22. It was further a part of the conspiracy that the members of the enterprise would use nominee owners to conceal the interests of the Colombo Family and other organized crime families in businesses requiring a Florida State alcoholic beverage license.

23. It was further a part of the conspiracy that the members of the enterprise would engage in conduct designed to protect their interests in property obtained through criminal activity, including murder, kidnaping and assault.

24. It was further part of the conspiracy that the members of the enterprise would take all steps necessary to prevent the detection by law enforcement of the criminal activities of the "South Florida crew" of the Colombo family.

All in violation of Title 18, United States Code, Section 1962(d).

#### COUNT 2

From in or about 1997, and continuing thereafter up to and including the date of the return of this Indictment, in the Southern District of Florida and elsewhere, defendants,

9

                    JOSEPH ROTUNNO,
                    PERCY MORRIS,
                    BERT CASKILL,
                    GARY BRAESEKE,
                    EMRO CAPRI,
                    MARTIN HALPERN,
                    DANIEL MEISEL,
                    WILLIAM HAWKINS,
                    JAMES TRAVERS,
                    BARBARA DREZEK,
                    MARTIN ZARCADOOLAS,
                    MICHAEL EDDY, and
                    SCOTT MILLER,

and other persons known and unknown to the Grand Jury, knowingly,

and willfully conducted, financed, managed, supervised, directed,

and owned all or part of an illegal gambling business which

involved five or more persons who conducted, financed, managed,

supervised, directed, and owned, all or part of such business and

which had a gross revenue of two thousand dollars ($2,000) or more

on one or more single days and was in substantially continuous

operation for a period in excess of thirty days, in violation of

the laws of the State of Florida, Sections 849.26 and other

applicable law.

        All in violation of Title 18, United States Code, Sections

1955 and 2.

                              **COUNT 3**

        From in or about 1997, and continuing thereafter up to and

including the date of the return of this Indictment, in the

Southern District of Florida and elsewhere, the defendants,

                    REYNOLDS MARAGNI,
                    JOSEPH ROTUNNO,
                    PERCY MORRIS,
                    BERT CASKILL,
                    GARY BRAESEKE,
                    DANIEL MEISEL,
                    WILLIAM HAWKINS,

                              10

                    MARTIN ZARCADOOLAS,
                    MICHAEL EDDY,
                    JAMES LAPOLLA, and
                    SCOTT MILLER,

did knowingly conspire, confederate, and agree with each other and

with other persons known and unknown to the Grand Jury to make

extortionate extensions of credit as defined by Title 18, United

States Code, Section 891 to numerous individuals in South Florida.

    All in violation of Title 18, United States Code, Section

892(a).

                            **COUNT 4**

    From in or about 1997, and continuing thereafter up to and

including the date of the return of this Indictment, in the

Southern District of Florida and elsewhere, the defendants,

                    REYNOLDS MARAGNI,
                    JOSEPH ROTUNNO,
                    PERCY MORRIS,
                    BERT CASKILL,
                    GARY BRAESEKE,
                    DANIEL MEISEL,
                    WILLIAM HAWKINS,
                    MARTIN ZARCADOOLAS,
                    MICHAEL EDDY,
                    JAMES LAPOLLA, and
                    SCOTT MILLER,

did knowingly conspire, confederate, and agree with each other and

with other persons known and unknown to the Grand Jury to

participate in the use of extortionate means to collect and attempt

to collect extensions of credit as defined by Title 18, United

States Code, Section 891 from numerous individuals in South

Florida.

    All in violation of Title 18, United States Code, Section

894(a)(1).

                                11

## COUNT 5

1.    From in or about 1997, and continuing thereafter up to
and including the date of the return of this Indictment, in the
Southern District of Florida and elsewhere, the defendants,

> REYNOLDS MARAGNI,
> JOSEPH ROTUNNO,
> PERCY MORRIS,
> BERT CASKILL,
> GARY BRAESEKE,
> EMRO CAPRI,
> MARTIN ZARCADOOLAS,
> MICHAEL EDDY, and
> KAISER AKEL,

did knowingly conspire, confederate, and agree with each other and
with other persons known and unknown to the Grand Jury to commit
offenses against the United States, that is, to violate Title 18,
United States Code, Sections 1956(a)(1)(A)(i) and (B)(i).

### THE PURPOSE AND OBJECT OF THE CONSPIRACY

2.    It was the purpose and object of the conspiracy to
knowingly and willfully conduct and attempt to conduct financial
transactions affecting interstate and foreign commerce, that is the
cashing of checks which involved the proceeds of specified unlawful
activity, that is: illegal gambling businesses, in violation of
Title 18, United States Code, Section 1955, and extortionate credit
transactions, in violation of Title 18, United States Code,
Sections 892 and 894, with the intent to promote the carrying on of
said specified unlawful activities, and knowing the transactions
were designed in whole or in part to conceal and disguise the
nature, location, source, ownership and control of the proceeds of
said specified unlawful activities and knowing that the property

12

involved represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 6

1. From in or about May 12, 1999, and continuing thereafter up to and including May 19, 1999, at Broward County, in the Southern District of Florida, the defendants,

JOSEPH ROTUNNO, and
RICHARD D'ONOFRIO

did knowingly and intentionally combine, conspire, confederate and agree with each other and with persons known and unknown to the Grand Jury to commit an offense against the United States, that is, to violate Title 18, United States Code, Section 2315.

### PURPOSE AND OBJECTS OF THE CONSPIRACY

2. It was the purpose and object of the conspiracy that the defendants would sell, receive, possess, conceal, store and dispose of jewelry and watches of a value of $5,000 or more which jewelry and watches had been transported across state boundaries after having been stolen and knowing that such jewelry and watches had been stolen, for purpose of generating illegal profits for members of the conspiracy.

### OVERT ACTS

In furtherance of this conspiracy and to effect the objects thereof, in the Southern District of Florida, the defendants and their co-conspirators committed at least one of the following overt acts, among others:

13

a.    On or about May 12, 1999, in the Southern District of Florida, defendant ROTUNNO had a meeting with defendant D'ONOFRIO concerning stolen jewelry and watches, which had been represented to them to have been stolen.

b.    On or about May 19, 1999, in the Southern District of Florida, defendant ROTUNNO had a meeting with defendant D'ONOFRIO concerning  stolen jewelry and watches which had been represented to them to have been stolen.

All in violation of Title 18, United States Code, Section 371.

A TRUE BILL

_____
FOREPERSON

_____
GUY A. LEWIS
UNITED STATES ATTORNEY

_____
PAUL F. SCHWARTZ
ASSISTANT UNITED STATES ATTORNEY

_____
JULIA STILLER
TRIAL ATTORNEY
UNITED STATES DEPARTMENT OF JUSTICE

14

**SOUTHERN DISTRICT OF FLORIDA**

| UNITED STATES OF AMERICA | CASE NO. _____ |
|---|---|

v.

## CERTIFICATE OF TRIAL ATTORNEY*

REYNOLDS MARAGNI et al _____          **Superseding Case Information**:

**Court Division**: (Select One)

   Miami     Key West
 X  FTL     WPB    FTP

New Defendant(s)        Yes _____    No _____
Number of New Defendants    _____
Total number of counts        _____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:      (Yes or No) _No_____
   List language and/or dialect _____

4. This case will take _20_ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                                          (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ |
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | _x_ | Misdem. | _____ |
| IV | 21 to 60 days | _____ | Felony | _x_ |
| V | 61 days and over | _____ | | |

6. Has this case been previously filed in this District Court? (Yes or No) _No_
   If yes:
   Judge: _____        Case No. _____
   (Attach copy of dispositive order)

Has a complaint been filed in this matter? (Yes or No) _No_____
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: 99-4618-Snow (search warrant) _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____        District of _____

Is this a potential death penalty case? (Yes or No) _____ No _____

7. Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? _x_ Yes __ No    If yes, was it pending in the Central Region? _x_ Yes __ No

_Paul J. Schmrt_

PAUL F. SCHWARTZ
ASSISTANT UNITED STATES ATTORNEY
COURT I.D. # A5500086

*Penalty Sheet(s) attached                                                    REV.4/7/99

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name: ___REYNOLDS MARAGNI_____ No: _____

Count #: 1     18 U.S.C. 1962(d)     RICO Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #: 3     18 U.S.C. 892     Conspiracy to Make Extortionate Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #: 4     18 U.S.C. 894     Conspiracy to Collect Extortionate Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #: 5     18 U.S.C. 1956(h)     Money Laundering Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name: __JOSEPH ROTUNNO_____ No: _____

Count #: 1    18 U.S.C. 1962(d)    RICO Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #: 2    18 U.S.C. 1955    Illegal Gambling Business

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine

Count #: 3    18 U.S.C. 892    Conspiracy to Make Extortionate Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #: 4    18 U.S.C. 894    Conspiracy to Collect Extortionate Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #: 5    18 U.S.C. 1956(h)    Money Laundering Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Count #:6    18 U.S.C. 371    Conspiracy to Receive Stolen Goods

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PENALTY SHEET**

Defendant's Name:  PERCY MORRIS _____ No: _____

Count #: 1     18 U.S.C. 1962(d)     RICO Conspiracy _____

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine _____

_____

Count #: 2     18 U.S.C. 1955     Illegal Gambling Business _____

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine _____

_____

Count #: 3     18 U.S.C. 892     Conspiracy to Make Extortionate Extensions of Credit ____

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine _____

_____

Count #: 4     18 U.S.C. 894     Conspiracy to Collect Extortionate Extensions of Credit ____

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine _____

_____

Count #: 5     18 U.S.C. 1956(h)     Money Laundering Conspiracy _____

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds
_____ involved in the transaction _____

_____

Count #: _____

*Max. Penalty: _____

_____

Count #: _____

*Max. Penalty: _____

_____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:  BERT CASKILL _____ No: _____

Count #: 1    18 U.S.C. 1962(d)    RICO Conspiracy _____

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine _____

Count #: 2    18 U.S.C. 1955    Illegal Gambling Business _____

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine _____

Count #: 3    18 U.S.C. 892    Conspiracy to Make Extortionate Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine _____

Count #: 4    18 U.S.C. 894    Conspiracy to Collect Extortionate Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine _____

Count #: 5    18 U.S.C. 1956(h)    Money Laundering Conspiracy _____

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds
involved in the transaction _____

Count #: _____

*Max. Penalty: _____

Count #: _____

*Max. Penalty: _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PENALTY SHEET**

Defendant's Name:    GARY BRAESEKE    No: _____

Count #: 1    18 U.S.C. 1962(d)    RICO Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a \$250,000 fine


Count #: 2    18 U.S.C. 1955    Illegal Gambling Business

*Max. Penalty: 5 years' imprisonment and up to a \$250,000 fine


Count #: 3    18 U.S.C. 892    Conspiracy to Make Extortionate Extensions of Credit

*Max. Penalty: 20 YEARS' IMPRISONMENT AND UP TO A \$250,000 FINE


Count #: 4    18 U.S.C. 894    Conspiracy to Collect Extortionate Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a \$250,000 fine


Count #: 5    18 U.S.C. 1956(h)    Money Laundering Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a \$500,000 fine or twice the value of the funds
            involved in the transaction


Count #: _____

*Max. Penalty: _____


Count #: _____

*Max. Penalty: _____


**\*Refers only to possible term of incarceration, does not include possible fines, restitution,**
**special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name:  ___EMRO CAPRI_____ No: _____

Count #: 1 ___18 U.S.C. 1962(d)___ RICO Conspiracy_____

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine_____

Count #: 2 ___18 U.S.C. 1955_____ Illegal Gambling Business_____

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine_____

Count #: 5 ___18 U.S.C. 1956(h)___ Money Laundering Conspiracy_____

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds
_____ involved in the transaction _____

Count #: 4 _____

*Max. Penalty:_____

Count #:_____

*Max. Penalty:_____

Count #:_____

*Max. Penalty:_____

Count #:_____

*Max. Penalty:_____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

REV 12/12/96

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PENALTY SHEET**

Defendant's Name: ___MARTIN HALPERN_____ No: _____

Count #: 1     18 U.S.C. 1962(d)     RICO Conspiracy _____

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine _____

Count #: 2     18 U.S.C. 1955     Illegal Gambling Business _____

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine _____

Count #: _____

*Max. Penalty: _____

Count #: _____

*Max. Penalty: _____

Count #: _____

*Max. Penalty: _____

Count #: _____

*Max. Penalty: _____

Count #: _____

*Max. Penalty: _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PENALTY SHEET**

Defendant's Name:   DANIEL MEISEL                No: _____

Count #: 1     18 U.S.C. 1962(d)     RICO Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #: 2     18 U.S.C. 1955     Illegal Gambling Business

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine

Count #: 3     18 U.S.C. 892     Conspiracy to Make Extortionate Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #: 4     18 U.S.C. 894     Conspiracy to Collect Extortionate Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PENALTY SHEET**

Defendant's Name:  WILLIAM HAWKINS  No: _____

Count #: 1    18 U.S.C. 1962(d)    RICO Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #: 2    18 U.S.C. 1955    Illegal Gambling Business

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine

Count #: 3    18 U.S.C. 892    Conspiracy to Make Extortionate Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #: 4    18 U.S.C. 894    Conspiracy to Collect Extortionate Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #: _____

*Max. Penalty: _____

Count #: _____

*Max. Penalty: _____

Count #: _____

*Max. Penalty: _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PENALTY SHEET**

Defendant's Name: ___JAMES TRAVERS_____ No: _____

Count #: 1   18 U.S.C. 1962(d)   RICO Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #: 2   18 U.S.C. 1955   Illegal Gambling Business

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:  BARBARA DREZEK _____ No: _____

Count #: 1    18 U.S.C. 1962(d)    RICO Conspiracy

\*Max. Penalty: 20 years' imprisonment and up to a \$250,000 fine

Count #: 2    18 U.S.C. 1955    Illegal Gambling Business

\*Max. Penalty: 5 years' imprisonment and up to a \$250,000 fine

Count #:

\*Max. Penalty:

Count #:

\*Max. Penalty:

Count #:

\*Max. Penalty:

Count #:

\*Max. Penalty:

Count #:

\*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96